UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

K. FELICIA DAVIS,

                            Plaintiff,                    5:12-CV-0276
                                                         (GTS/DEP)
v.

CITY OF SYRACUSE; and
STEPHANIE A. MINER,

                            Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

K. FELICIA DAVIS
  Plaintiff, *Pro Se*
414 Brookford Road
Syracuse, NY 13224

BOND, SCHOENECK & KING, PLCC                    LAURA H. HARSHBARGER, ESQ.
  Counsel for Defendants                        KRISTEN E. SMITH, ESQ.
One Lincoln Center
Syracuse, NY 13202

GLENN T. SUDDABY, United States District Judge

<u>**DECISION and ORDER**</u>

        Currently before the Court, in his employment discrimination action filed by K. Felecia

Davis ("Plaintiff") against the City of Syracuse and Stephanie A. Miner ("Defendants"), is

Defendants' motion for summary judgment.  (Dkt. No. 63.)  For the reasons set forth below,

Defendants' motion is granted.

## I.    RELEVANT BACKGROUND

### A.    Summary of Plaintiff's Claims and Defendants' Counterclaims

Generally, in her Amended Complaint, Plaintiff asserts the following ten claims arising from her alleged wrongful termination from the position of Board Administrator of the City of Syracuse's Citizen Review Board on February 4, 2011, after she took maternity leave in late October of 2010: (1) a claim against Defendant City for sex discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII"); (2) a claim against Defendant City for retaliation under Title VII; (3) a claim against Defendant City for sex discrimination under the New York State Human Rights Law, New York Executive Law § 296 *et seq*. ("the Executive Law"); (4) a claim against Defendant City for retaliation under the Executive Law; (5) a claim against Defendant Miner for aiding and abetting sex discrimination under the Executive Law; (6) a claim against Defendant Miner for aiding and abetting retaliation under the Executive Law; (7) a claim against both Defendants for violation of the right to due process under the Fourteenth Amendment and 42 U.S.C. § 1983; (8) a claim against Defendant Miner for violation of the right to equal protection under 42 U.S.C. § 1983 and the Fourteenth Amendment; (9) a claim against Defendant City for violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*. ("FMLA"); and (10) a claim against Defendant Miner for retaliation under 42 U.S.C. § 1983 and the First Amendment.  (Dkt. No. 6.)  Familiarity with the factual allegations supporting these claims is assumed in this Decision and Order, which is intended primarily for the review of the parties.

Generally, in their Answer, Defendants assert the following four counterclaims arising from Plaintiff's alleged practice of law using a City-paid secretary and City computer during the

hours that she claimed to have worked for the City: (1) a counterclaim of fraud under New York State common law; (2) a counterclaim of negligent misrepresentation under New York State common law; (3) a counterclaim of unjust enrichment under New York State common law; and (4) a counterclaim of faithless servant under New York State common law. (Dkt. No. 8.)

###    B.    Undisputed Material Facts

The following facts were asserted and properly supported by Defendants in their Statement of Material Facts and were either admitted or denied without proper support by Plaintiff in her Response thereto. (*Compare* Dkt. No. 63, Attach. 1 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 67, Attach. 10 [Plf.'s Rule 7.1 Response].)

Before reciting these facts, the Court pauses to explain the reason for certain deficiencies in Plaintiff's response to Defendants' Statement of Facts. On a motion for summary judgment, denials of fact that are based on a lack of personal knowledge, mere information or belief, and/or inadmissible evidence are insufficient to create a genuine dispute. Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to . . . oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence and show that the affiant or declarant is competent to testify on matters stated."); *Rodriguez v. Bubnis*, 11-CV-1436, 2014 WL 6078529, at *10, n.25 (N.D.N.Y. Nov. 13, 2014) (Suddaby, J.) (collecting cases). Moreover,

the assertion of additional material facts by a non-movant is permitted only if the additional material facts are both (1) in dispute and (2) contained in separately numbered paragraphs. N.D.N.Y. L.R. 7.1(a)(3) ("The non-movant's response may also set forth any additional material facts that the non-movant contends are *in dispute* in *separately numbered* paragraphs.")

(emphasis added).[1]

<u>Plaintiff's Employment by the City</u>

1.      Plaintiff was a full-time employee of the City of Syracuse, and served as the Administrator of the City's Citizen Review Board ("CRB").[2]

2.      Plaintiff was not employed to act as a lawyer for the City or the CRB.[3]

3.      Plaintiff's employment was not covered by an individual employment contract or by any of the City's collective bargaining agreements; rather, she served at the discretion of the CRB and was able to be removed by the CRB for good cause.[4]

4.      The CRB is comprised of Board members who are volunteer citizens appointed by the Syracuse Common Council and the Mayor.[5]

---

[1]      The Court notes that, under Fed. R. Civ. P. 56 and N.D.N.Y. Local Rule 7.1, there is no procedure by which a non-movant may assert a "counter statement of [undisputed] material facts" in response to a motion for summary judgment: the vehicle for such undisputed material facts would be a *cross*-motion for summary judgment (i.e., one seeking a judgment due to a *lack* of a genuine dispute of material fact).  *See* Fed. R. Civ. P. 56(a); N.D.N.Y. L.R. 7.1(a)(3).

[2]      (*Compare* Dkt. No. 63, Attach. 1, at ¶ 1 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 1 [Plf.'s Rule 7.1 Response, admitting fact asserted].)

[3]      (*Compare* Dkt. No. 63, Attach. 1, at ¶ 2 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 2 [Plf.'s Rule 7.1 Response, admitting fact asserted].)

[4]      (Dkt. No. 63, Attach. 8, at ¶ 7 [Miner Decl.].)  *See also* City of Syracuse Local Law 11 of 1993 § 6(3)(a),(b).

[5]      (Dkt. No. 63, Attach. 3, at 7 [attaching page "38" of Davis Dep. Tr.].)  *See also* City of Syracuse Local Law 11 of 1993 §§ 1, 4(2), 5(1).

<u>Mayor's Early Decisions Regarding the CRB</u>

5.      Even before becoming Mayor, as a Common Councilor, Mayor Stephanie Miner

heard comments about the CRB that were overwhelmingly negative, and heard story after story

about citizens who went to the CRB office and found it closed or who made complaints to the

CRB but did not hear back from it.[6]

6.      When Mayor Miner took office, the CRB was one of the issues she wanted to

address.[7]

7.      In her first month in office (January of 2010), Mayor Miner denied the CRB's

request for authorization to hire a new employee (to fill a vacant investigator position), because

she was unwilling to devote taxpayer money to a CRB that was not producing value to the

taxpayers, deciding instead that the City's money would be better spent on commissioning a

study of CRBs in other cities that were more effective.[8]

8.      As a result, Mayor Miner appointed Christine Fix to conduct the study.[9]

9.      After Ms. Fix completed her report of CRB models in June 2010, Mayor Miner

distributed the report within her administration, with the directive that she wanted to explore a

---

[6]      (*Compare* Dkt. No. 63, Attach. 1, at ¶ 5 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 5 [Plf.'s Rule 7.1 Response, citing record evidence that fails to controvert fact asserted, and in any event that fails show personal knowledge sufficient to controvert fact asserted].)

[7]      (*Compare* Dkt. No. 63, Attach. 1, at ¶ 6 [Defs.' Rule 7.1 Statement, citing Paragraph 9 of Miner Declaration, which supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 6 [Plf.'s Rule 7.1 Response, citing record evidence that fails to controvert fact asserted, and in any event that fails show personal knowledge sufficient to controvert fact asserted].)

[8]      (Dkt. No. 63, Attach. 8, at ¶¶ 10-11 [Miner Decl.].)

[9]      (Dkt. No. 63, Attach. 8, at ¶ 10 [Miner Decl.].)

new model for the CRB that would be more effective and impactful.[10]

<u>Plaintiff's Non-Appearance at the *Paulk* Trial</u>

10.      The *Paulk* case was a federal lawsuit brought by a citizen, Martin Paulk, against

two SPD officers (*Paulk v. Lester*, 06-CV-1343 [N.D.N.Y.]).[11]

11.      On October 21, 2010, a process server attempted to personally serve a subpoena

on Plaintiff at her home.[12]

12.      The subpoena called for CRB documents and for Plaintiff to testify at the *Paulk*

trial on Monday, November 1, 2010.[13]

13.      Plaintiff was not home, but her husband reached her by telephone.[14]

14.      Plaintiff spoke by telephone to the gentleman attempting to deliver the papers,

and instructed him to deliver the papers to the City Corporation Counsel's office.[15]

---

[10]      (*Compare* Dkt. No. 63, Attach. 1, at ¶ 9 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 9 [Plf.'s Rule 7.1 Response, failing to cite record evidence that controverts fact asserted].)

[11]      (*Compare* Dkt. No. 63, Attach. 1, at ¶ 10 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 10 [Plf.'s Rule 7.1 Response, admitting fact asserted].)

[12]      (*Compare* Dkt. No. 63, Attach. 1, at ¶ 11 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 11 [Plf.'s Rule 7.1 Response, failing to cite record evidence that controverts fact asserted].) *See also Paulk v. Lester*, 06-CV-1343, Tr. of Hrg. of Jan. 24, 2011 at 16-17, 70 (N.D.N.Y. filed Feb. 9, 2011).

[13]      (*Compare* Dkt. No. 63, Attach. 1, at ¶ 12 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 12 [Plf.'s Rule 7.1 Response, failing to cite record evidence that controverts fact asserted].)

[14]      (*Compare* Dkt. No. 63, Attach. 1, at ¶ 13 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 13 [Plf.'s Rule 7.1 Response, admitting fact asserted].)

[15]      (*Compare* Dkt. No. 63, Attach. 1, at ¶ 14 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 14 [Plf.'s Rule 7.1 Response, failing to cite record evidence that controverts fact asserted].) *See also Paulk v.*

15. The process server delivered the papers to the City's Corporation Counsel office on Friday, October 22, 2010.[16]

16. The *Paulk* trial was scheduled to begin on November 1, 2010.[17]

17. Before serving the subpoena, Richard Brickwedde (Paulk's attorney), had not indicated a desire to call Plaintiff as a witness.[18]

18. On October 22, 2010, Joseph Doyle, a City attorney on the *Paulk* case, submitted a letter to the presiding judge, United States District Judge Charles Kornmann, requesting a conference to address the subpoena.[19]

19. Doyle's co-counsel, James McGinty, anticipated that Judge Kornmann would agree with the City's position that Brickwedde should not be allowed to call Plaintiff as a witness in the *Paulk* trial.[20]

---

*Lester*, 06-CV-1343, Tr. of Hrg. of Jan. 24, 2011 at 16-17, 70 (N.D.N.Y. filed Feb. 9, 2011).

[16]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 15 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 15 [Plf.'s Rule 7.1 Response, admitting fact asserted].)

[17]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 16 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 16 [Plf.'s Rule 7.1 Response, failing to cite record evidence that controverts fact asserted].)

[18]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 17 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 17 [Plf.'s Rule 7.1 Response, failing to cite record evidence that controverts fact asserted].)

[19]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 18 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 18 [Plf.'s Rule 7.1 Response, failing to cite record evidence that controverts fact asserted].)

[20]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 19 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 19 [Plf.'s Rule 7.1 Response, failing to cite record evidence that controverts fact asserted].)

20.     Judge Kornmann did not address the issue of the subpoena until a pre-trial conference on October 28, 2010, during which he decided that Brickwedde would be allowed to call Plaintiff.[21]

21.     At the time of the pre-trial conference on October 28, 2010, McGinty and Doyle assumed, from the fact that Plaintiff had told the process server to bring the package to their office, that Plaintiff knew that the package contained a subpoena in the *Paulk* case.[22]

22.     At the time of the pre-trial conference on October 28, 2010, McGinty and Doyle were not aware that Plaintiff was pregnant or that she would be going on maternity leave.[23]

23.     On Friday, October 29, 2010, McGinty called the CRB office and asked to speak with Plaintiff.[24]

24.     The CRB secretary told McGinty that Plaintiff was on maternity leave.[25]

---

[21]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 20 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 20 [Plf.'s Rule 7.1 Response, failing to cite record evidence that controverts fact asserted].)

[22]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 21 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 21 [Plf.'s Rule 7.1 Response, failing to cite record evidence that controverts fact asserted].) *See also Paulk v. Lester*, 06-CV-1343, Tr. of Hrg. of Jan. 24, 2011 at 31-37 (N.D.N.Y. filed Feb. 9, 2011).

[23]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 22 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 22 [Plf.'s Rule 7.1 Response, citing record evidence that does not regard the awareness of McGinty and Doyle on October 28 but their awareness of October *29* when McGinty called Plaintiff's office and was told by her secretary that she was out on maternity leave].)

[24]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 23 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 23 [Plf.'s Rule 7.1 Response, failing to cite record evidence that controverts fact asserted].)

[25]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 24 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 24 [Plf.'s Rule 7.1 Response, failing to cite record evidence that controverts fact asserted].)

25.     Plaintiff's maternity leave began on October 29, 2010.[26]

26.     McGinty explained to Plaintiff's secretary that a subpoena had been issued to Plaintiff for her to testify in the *Paulk* trial on Monday at 9:00 a.m., and that whether she was on leave from work was immaterial.[27]

27.     McGinty told Plaintiff's secretary that she needed to get in touch with and tell her that she needed to appear as subpoenaed or, if she could not, she needed to call the attorney who issued the subpoena, Mr. Brickwedde, to make other arrangements for her testimony.[28]

28.     Plaintiff's secretary called her that day and informed her that a man from the Corporation Counsel's office had called and indicated that she should call an attorney by the name of Brickwedde.[29]

29.     Plaintiff called Brickwedde and left a voicemail informing him that something had been received by the City for her and that she was going on maternity leave.[30]

---

[26]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 25 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 25 [Plf.'s Rule 7.1 Response, admitting fact asserted].)

[27]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 26 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 26 [Plf.'s Rule 7.1 Response, failing to cite record evidence that controverts fact asserted].)

[28]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 27 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 27 [Plf.'s Rule 7.1 Response, failing to cite record evidence that controverts fact asserted].)

[29]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 28 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 28 [Plf.'s Rule 7.1 Response, admitting fact asserted].)

[30]     (Dkt. No. 67, at ¶ 15 [Plf.'s Decl.]; Dkt. No. 67, Attach. 4, at 5 [attaching page "33" of transcript of January 2010 hearing in *Paulk*]; *cf.* Dkt. No. 63, Attach. 11, at 9 [Ex. B to Perez-Williams Decl., attaching letter from Plaintiff to Perez-Williams dated Dec. 3, 2010 stating that Plaintiff had informed Brickwedde that she "had not seen any subpoena"].)

30.     Brickwedde returned Plaintiff's call but missed her and also left a voicemail.[31]

31.     Brickwedde advised Plaintiff that he could not speak to her for ethical reasons and

instructed her to speak to McGinty.[32]

32.     Plaintiff did not call McGinty or Doyle.[33]

33.     On the first day of the trial (November 1, 2010), Brickwedde called Plaintiff as a

witness; however, she was not there.[34]

34.     When Plaintiff did not appear, McGinty called the CRB office.[35]

35.     The CRB secretary answered and told McGinty that Plaintiff had called her

earlier that day to say that she was in labor and going to the hospital, which information

McGinty relayed to Judge Kornmann.[36]

---

[31]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 30 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 30 [Plf.'s Rule 7.1 Response, admitting fact asserted].)

[32]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 31 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 26 [Plf.'s Rule 7.1 Response, citing record evidence that fails to controvert fact asserted].)

[33]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 32 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 32 [Plf.'s Rule 7.1 Response, citing to record evidence that fails to controvert fact asserted].)

[34]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 33 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 33 [Plf.'s Rule 7.1 Response, citing to record evidence that fails to controvert fact asserted].)

[35]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 34 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 34 [Plf.'s Rule 7.1 Response, merely denying knowledge of fact asserted, and/or impugning judgment of McGinty, neither of which suffices to controvert fact asserted].)

[36]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 35 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 35 [Plf.'s Rule 7.1 Response, merely denying knowledge offact asserted, which fails to controvert that fact].)

36.     Plaintiff was not in the hospital giving birth on November 1, 2010, but was at her doctor's office; she gave birth on November 9, 2010.

37.     Meanwhile, at trial, another issue was occurring: McGinty and Doyle were informed that Brickwedde had independently obtained a CRB report stating that the CRB had found his client's complaint of police misconduct "substantiated."

38.     When questioned by Judge Kornmann as to why McGinty and Doyle had not produced the document during discovery, McGinty explained that the CRB had not provided it to them (after they had requested documents from the CRB during the course of the *Paulk* discovery process).[37]

39.     As a result of Plaintiff's failure to appear, Judge Kornmann imposed a sanction on the police officers in the form of allowing the CRB's "substantiated" finding to come into the record without allowing any testimony to explain or minimize the impact of the detrimental document on the police officers' case.[38]

40.     After a three-day trial, the jury returned a verdict in favor of the City's police officers.[39]

### New Information Emerges Concerning Plaintiff's Whereabouts

41.     On November 8, 2010, Brickwedde filed a motion for a new trial and for additional sanctions in the *Paulk* case.

---

[37]     (Dkt. No. 63, Attach. 7, at ¶¶ 14, 21 [McGinty Decl.]; *cf.* Dkt. No. 67 [Plf.'s Decl., merely denying personal knowledge of the CRB's receipt of such a request in 2008].)

[38]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 39 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 39 [Plf.'s Rule 7.1 Response, merely denying knowledge of fact asserted, which fails to controvert that fact].)

[39]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 40 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 40 [Plf.'s Rule 7.1 Response, merely denying knowledge of fact asserted, which fails to controvert that fact].)

42.     The motion was based, in large part, on Plaintiff's non-appearance at trial and the City's failure to produce all relevant CRB documents during discovery.[40]

43.     On November 16, 2010, Brickwedde supplemented his motion papers on the ground that he had found out that Plaintiff had voted in an election on November 2, 2010, while the three-day *Paulk* trial was still ongoing.[41]

44.     From the perspective of McGinty and City Corporation Counsel Juanita Perez-Williams, this fact called into question the information that Plaintiff's secretary had provided to McGinty on November 1, 2010, and that McGinty had, in turn, had provided to Judge Kornmann (i.e., that Plaintiff was in labor and going to the hospital on November 1, 2010).[42]

45.     On November 24, 2010, Judge Kornmann issued a memorandum ordering the production of extensive documents and information about Plaintiff's whereabouts at the time of trial, as well as "all records of the office [Plaintiff] heads which deal in any way with [the *Paulk*] case."

---

[40]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 42 [Defs.' Rule 7.1 Statement, citing to record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 42 [Plf.'s Rule 7.1 Response, merely denying knowledge of fact asserted, which fails to controvert that fact].) *See also Paulk v. Lester*, 06-CV-1343, Plf.'s Memo. of Law (N.D.N.Y. filed Nov. 8, 2010).

[41]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 43 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 43 [Plf.'s Rule 7.1 Response, citing to record evidence that fails to controvert fact asserted].) *See also Paulk v. Lester*, 06-CV-1343, Plf.'s Supplemental Affirm. (N.D.N.Y. filed Nov. 16, 2010).

[42]     (Dkt. No. 63, Attach. 7, at ¶ 18 [McGinty Decl.]; Dkt. No. 63, Attach. 10, at ¶ 8 [Perez-Williams Decl.]; *cf.* Dkt. No. 67, Attach. 10 [Plf.'s Rule 7.1 Response, citing record evidence that does not controvert fact asserted].)

46.     To explore these issues, Judge Kornmann scheduled a hearing for January 24, 2011.[43]

47.     In a letter to Perez-Williams dated December 3, 2010, Plaintiff stated, "I made a call to Mr. Brickwedde and left a voicemail informing him of my late stage of pregnancy and start of labor (I had begun to dilate), and informed [him] that I had not seen any subpoena."[44]

48.     In response to Judge Kornmann's memorandum of November 24, 2010, Plaintiff provided Corporation Counsel's office with a number of CRB documents related to *Paulk* that had not been provided in response to earlier requests to her office for CRD documents related to *Paulk*.[45]

<u>The City's Investigation into Plaintiff and the Operation of the CRB</u>

49.     When Perez-Williams learned in late-November of the motion for a new trial and for sanctions, she informed Mayor Miner as to what was occurring; Miner first learned about the subpoena and Plaintiff's non-appearance only after Plaintiff had not appeared.[46]

---

[43]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 46 [Defs.' Rule 7.1 Statement, citing to record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 46 [Plf.'s Rule 7.1 Response, failing to either deny fact asserted or cite record evidence that controverts fact asserted].)

[44]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 47 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 47 [Plf.'s Rule 7.1 Response, citing record evidence that fails to controvert fact asserted].)

[45]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 48 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 48 [Plf.'s Rule 7.1 Response, citing record evidence that fails to controvert fact asserted].)

[46]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 49 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 49 [Plf.'s Rule 7.1 Response, citing record evidence that fails to controvert fact asserted].)

50.	The *Paulk* situation was deeply concerning to Mayor Miner.[47] At the time Miner took office, she believed that something had to be done about the CRB.[48] The *Paulk* matter brought the perceived problem of the CRB into a state of immediacy for her.[49] As she saw the situation, instead of merely being a waste of resources, the CRB now was creating potential liability for the City.[50]

51.	Upon hearing about the *Paulk* subpoena incident, Mayor Miner asked Perez-Williams to "drill down" into what was going on with Plaintiff and the CRB and to report back to her.[51]

52.	The City's investigation indicated the following:

a.	As of the end of November 2010, the CRB's two employees (Plaintiff and her secretary, Carolyn Williams) had not entered time sheets into the City's timekeeping/payroll system since June; this meant that, even though Plaintiff was currently claiming to be on maternity leave, and had been (according to her) on such leave since late October, she was allowing the City to pay her as an active employee, without having to use any of

---

[47]	(*Compare* Dkt. No. 63, Attach. 1, at ¶ 50 [Defs.' Rule 7.1 Statement, citing to record evidence that supports facts asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 50 [Plf.'s Rule 7.1 Response, citing record evidence that fails to controvert facts asserted].)

[48]	(*Id*.)

[49]	(*Id*.)

[50]	(*Id*.)

[51]	(*Compare* Dkt. No. 63, Attach. 1, at ¶ 51 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 51 [Plf.'s Rule 7.1 Response, citing record evidence that fails to controvert fact asserted].)

accrued time-off benefits.[52]

b.    On December 2, 2010, Plaintiff signed and submitted six months' worth of time sheets on a single day.[53]

c.    On December 8, 2010, Plaintiff filled out an FMLA request form, which "requested" permission to take an FMLA leave that had begun six weeks earlier.[54]

d.    Several CRB Board positions were vacant, other Board members had been appointed but never properly sworn in, and still other Board members' terms had expired, such that they were serving terms to which they had not been appointed; this information led Perez-Williams to conclude that the CRB could not legally take action, because it did not have a quorum of individuals properly appointed and installed in accordance with the City charter.[55]

---

[52]    (*Compare* Dkt. No. 63, Attach. 1, at ¶ 51(a) [Defs.' Rule 7.1 Statement, citing record evidence that supports facts asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 51(a) [Plf.'s Rule 7.1 Response, citing record evidence that fails to controvert facts asserted].)

[53]    (*Compare* Dkt. No. 63, Attach. 1, at ¶ 51(b) [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 51(b) [Plf.'s Rule 7.1 Response, failing to either deny fact asserted or cite record evidence that controverts fact asserted].)

[54]    (*Compare* Dkt. No. 63, Attach. 1, at ¶ 51(c) [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 51(c) [Plf.'s Rule 7.1 Response, failing to either deny fact asserted or cite record evidence that controverts fact asserted].)

[55]    (*Compare* Dkt. No. 63, Attach. 1, at ¶ 51(d) [Defs.' Rule 7.1 Statement, citing record evidence that supports facts asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 51(d) [Plf.'s Rule 7.1 Response, failing to either deny facts asserted or cite record evidence that controverts facts asserted].)

e.  The CRB had not been forwarding citizen complaints to the Syracuse Police Department Internal Affairs Division ("IAD") on a timely basis so that the complaints could be properly investigated.[56]

f.  For example, on December 16, 2010, the CRB sent 12 citizen complaints to IAD.[57]

g.  The 12 citizen complaints Plaintiff's office forwarded on December 16, 2010, had been marked as received by the CRB as much as nine months earlier; before the mass mailing to IAD on December 16, 2010, the CRB office had sent only two citizen complaints to IAD for all of 2010.[58]

h.  The local law requires the CRB to forward citizen complaints to IAD upon receiving them because IAD has the first 45 days to conduct its investigation.[59]

---

[56]  (*Compare* Dkt. No. 63, Attach. 1, at ¶ 51(e) [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 51(e) [Plf.'s Rule 7.1 Response, failing to either deny fact asserted or cite record evidence that controverts fact asserted].)

[57]  (*Compare* Dkt. No. 63, Attach. 1, at ¶ 51(f) [Defs.' Rule 7.1 Statement, citing record evidence that supports facts asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 51(f) [Plf.'s Rule 7.1 Response, failing to either deny facts asserted or cite record evidence that controverts facts asserted].)

[58]  (*Compare* Dkt. No. 63, Attach. 1, at ¶ 51(g) [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 51(g) [Plf.'s Rule 7.1 Response, failing to either deny fact asserted or cite record evidence that controverts fact asserted].)

[59]  (*Compare* Dkt. No. 63, Attach. 1, at ¶ 51(h) [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 51(h) [Plf.'s Rule 7.1 Response, failing to either deny fact asserted or cite record evidence that controverts fact asserted].)

i.     While the CRB may have kept statistical reports at its office, and given those reports to the Syracuse Common Council during each budget year, the CRB had not *published monthly* and *quarterly* statistical reports, as required by the CRB ordinance.[60]

j.     The last available meeting minutes were from June 2010.[61]

k.     In early October of 2010, Plaintiff refused to reveal, to a Common Councilor, the current CRB Board members' names (which were considered by the Common Councilor and Perez-Williams to be public information).[62]

l.     Several times Plaintiff was late in submitting her budget requests to the City's Finance Department.[63]

53.     Perez-Williams shared these and the remainder of her findings with Mayor Miner.[64]

---

[60]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 51(i) [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 51(i) [Plf.'s Rule 7.1 Response, failing to cite record evidence that controverts fact asserted].)

[61]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 51(j) [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 51(j) [Plf.'s Rule 7.1 Response, failing to cite record evidence that controverts fact asserted].)

[62]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 51(k) [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 51(k) [Plf.'s Rule 7.1 Response, failing to cite *any* record evidence].)

[63]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 51(l) [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 51(l) [Plf.'s Rule 7.1 Response, failing to cite record evidence that controverts fact asserted].)

[64]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 53 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 53 [Plf.'s Rule 7.1 Response, failing to cite record evidence that controverts fact asserted].)

54.     Based on these overall findings, including the negligent handling of the *Paulk* subpoena and the "numerous deficiencies in the operation of the CRB, caused in large part by [her] failure to exercise [her] statutory responsibilities," Mayor Miner decided to terminate Plaintiff's employment.[65]

The City Discovers Plaintiff's Private Practice Work in Her City Office on City Time

55.     Mayor Miner reached out to the New York State Comptroller and requested an audit of the CRB office concerning the issues uncovered in the City's investigation.[66]

56.     Mayor Miner made this request for an audit within days of Plaintiff's termination.[67]

57.     The State Comptroller performed its audit largely in late 2011 and early 2012.[68]

58.     In connection with the audit process, the City was asked to provide the State Comptroller with access to the CRB office and its paper files and electronic records, including the City computer that had been issued to Plaintiff.[69]

---

[65]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 54 [Defs.' Rule 7.1 Statement, citing record evidence that supports facts asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 54 [Plf.'s Rule 7.1 Response, citing record evidence that fails to controvert facts asserted].)

[66]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 55 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 55 [Plf.'s Rule 7.1 Response, citing record evidence that fails to controvert fact asserted].)

[67]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 56 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 56 [Plf.'s Rule 7.1 Response, admitting fact asserted].)

[68]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 57 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 57 [Plf.'s Rule 7.1 Response, citing record evidence that fails to controvert fact asserted].)

[69]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 58 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 58 [Plf.'s Rule 7.1 Response, citing record evidence that fails to controvert fact asserted].)

59.     As a result of the City's review of the data and information requested in connection with the audit, it was brought to Mayor Miner's attention that Plaintiff had used the City's resources (i.e., the City's office space, the City-paid secretary, the City's fax machine, the City's computer, etc.) to engage in her private law practice, and that Plaintiff had submitted time sheets claiming to have worked for the City when she had been engaged in her private law practice, not City business.[70]

60.     By the late spring of 2012, Mayor Miner believed that the City was due potentially significant recompense; this determination grew out of the documentation the City reviewed in connection with and in response to the ongoing audit, which was occurring at the time the City answered the Complaint.[71]

61.     The Comptroller's report was published in June 2012 and stated, among other things, that "[t]he analysis found that the Administrator spent a significant amount of time during normal business hours engaging in private legal work using a City-owned computer."[72]

### The City Remakes the CRB

62.     Immediately after Plaintiff's termination, the City changed the locks on the doors of the CRB office, and the CRB ceased to function (for the time being).[73]

---

[70]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 59 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 59 [Plf.'s Rule 7.1 Response, citing record evidence that fails to controvert fact asserted].)

[71]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 60 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 60 [Plf.'s Rule 7.1 Response, citing record evidence that fails to controvert fact asserted].)

[72]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 61 [Defs.' Rule 7.1 Statement, citing record evidence that supports fact asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 61 [Plf.'s Rule 7.1 Response, citing record evidence that fails to controvert fact asserted].)

[73]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 62 [Defs.' Rule 7.1 Statement, citing record evidence that supports facts asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 62 [Plf.'s Rule 7.1

63.     The City formed an ad hoc committee to propose reforms to the CRB and, as a result of this committee's work, the Common Council passed, and Mayor Miner signed into law, new legislation designed to ensure that the CRB would be accountable and effective going forward.[74]

64.     The City started fresh with new citizens Board members (five new appointments); and the new CRB Board selected a new Administrator.[75]

**C.     Summary of Parties' Arguments on Defendants' Motion**

**1.     Defendants' Memorandum of Law**

Generally, in their memorandum of law, Defendants assert seven arguments.  (Dkt. No. 63, Attach. 13 [Defs.' Memo. of Law].)

First, Defendants argue, Plaintiff's pregnancy-discrimination claims under Title VII and the Executive Law should be dismissed for two reasons: (a) even assuming Plaintiff can meet her modest *prima facie* burden on such a claim, the City need only articulate a legitimate, non-discriminatory reason for its action (which it has done, given Plaintiff's negligence with respect to the *Paulk* matter as well as her numerous deficiencies in the operation of the CRB); and (b) the burden then shifts to Plaintiff to prove by a preponderance of the evidence that the legitimate reasons offered by the City were not its true reasons but were a pretext for discrimination, and that intentional discrimination was the real reason for the adverse action

_____

Response, failing to cite any record evidence that controvert facts asserted].)

[74]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 63 [Defs.' Rule 7.1 Statement, citing record evidence that supports facts asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 63 [Plf.'s Rule 7.1 Response, failing to cite any record evidence that controvert facts asserted].)

[75]     (*Compare* Dkt. No. 63, Attach. 1, at ¶ 64 [Defs.' Rule 7.1 Statement, citing record evidence that supports facts asserted] *with* Dkt. No. 67, Attach. 10, at ¶ 64 [Plf.'s Rule 7.1 Response, either admitting or denying knowledge of facts asserted].)

(which she has not done, and cannot do, given that her disagreement with the City's assessment of her performance does establish pretext, her conspiracy theory is sheer speculation, McGinty is not a "similarly situated" comparator, her claim of being "scapegoated" for the *Paulk* debacle undercuts her pregnancy-discrimination theory, and no reasonable factfinder could conclude that the City completely overhauled the CRB merely because Plaintiff had a baby).  (*Id.*)

Second, Defendants argue, in any event, Plaintiff's retaliation claims under Title VII and the Executive Law should be dismissed for three reasons: (a) after a plaintiff has established a *prima facie* case of retaliation (showing protected activity, an adverse employment action, and a causal relationship), the employer can then meet its burden of articulating a legitimate, non-retaliatory reason for filing counterclaims by establishing a reasonable good-faith belief that the claims were valid, after which any presumption of retaliation drops out and the plaintiff bears a "substantial burden," pursuant to which she must show that, but-for the protected activity, the employer would not have taken the adverse action; (b) here, Plaintiff cannot even establish a *prima facie* case because a non-frivolous compulsory counterclaim is generally not, as a matter of law, an adverse employment action, and the counterclaims asserted by the City in this action are amply supported by the record; and (c) in any event, Plaintiff cannot establish pretext because the fact that the City's counterclaims were filed shortly after Plaintiff's Complaint was filed does not save Plaintiff's retaliation claims (in that such a proximity of time is necessary with counterclaims), and the City was investigating any actionable malfeasance long before Plaintiff filed her Complaint.  (*Id.*)

Third, Defendants argue, Plaintiff's aider-and-abettor claims under the Executive Law should be dismissed because there is no primary violation of the Executive Law to aid or abet. (*Id.*)

Fourth, Defendants argue, Plaintiff's "stigma plus" procedural due process claim under the Fourteenth Amendment should be dismissed for three reasons: (a) even if she could show a damage to her reputation (thus satisfying the "stigma" element), she was, as an at-will government employee, afforded all the process she was due, given the availability of an Article 78 proceeding to clear her name (which suffices to provide the requisite post-deprivation process to a terminated employee, even if that employee fails to avail herself of that process); (b) she cannot dispute that she was an at-will employee, because she was not subjected to any employment or collective bargaining agreement (and, indeed, her argument that she served at the pleasure of the CRB supports the conclusion that she was an at-will employee); and (c) to the extent Plaintiff argues that Mayor Miner lacked the authority to terminate her, that argument relates to a due process claim and thus Plaintiff was able to assert it in an Article 78 proceeding. (*Id.*)

Fifth, Defendants argue, Plaintiff's equal protection claim under the Fourteenth Amendment should be dismissed for the same reasons that her Title VII pregnancy-discrimination claim should be dismissed. (*Id.*)

Sixth, Defendants argue, Plaintiff's FMLA claim should be dismissed for the same reasons that her Title VII pregnancy-discrimination claim should be dismissed. (*Id.*)

Seventh, Defendants argue, Plaintiff's retaliation claim under the First Amendment should be dismissed for three reasons: (a) her testimony before Judge Kornmann during the sanctions hearing of January 24, 2011, was not "protected" (in that she was not speaking as a citizen but as an employee); (b) in any event, her termination on February 4, 2011, was not caused by that testimony but by her conduct in connection with the *Paulk* subpoena in November of 2010; and (c) at the very least, Defendant Miner is protected from liability as a matter of law

by the doctrine of qualified immunity (given that the issue of whether Plaintiff was speaking as a citizen rather than as an employee was not "clearly established" during the time in question). (*Id.*)

### 2. Plaintiff's Opposition Memorandum of Law

Generally, in her opposition memorandum of law, Plaintiff asserts seven arguments. (Dkt. No. 67, Attach. 9 [Plf.'s Opp'n Memo. of Law].)

First, Plaintiff argues, she has established a sex-discrimination claim under Title VII (and presumably under the Executive Law) for two reasons: (a) Defendants do not dispute that she has established a *prima facie* case that she was discriminated against by the City due to her pregnancy; and (b) as a result, to avoid summary judgment, she need not show that the City's proffered reasons were false or not a factor but only that the prohibited factor (i.e., her pregnancy) was among the motivating factors (which she has done, due to Defendants' admission that her non-appearance at trial, which occurred while she was out on maternity leave, was a motivating reason for her termination). (*Id.*)

Second, Plaintiff argues, she has established a retaliation claim under Title VII (and presumably under the Executive Law) because the City's counterclaims are baseless in that (a) she was permitted by the CRB to engage in a private legal practice and (b) Defendant Miner knew, before the events in question, that Plaintiff was engaging in that private legal practice. (*Id.*)

Third, Plaintiff argues, she has established an aiding-and-abetting claim against Defendant Miner under the Executive Law because Miner worked to develop what she knew were baseless reasons for Plaintiff's termination, which reasons were relied on by the City of Syracuse to engage in sex discrimination and retaliation under the Executive Law. (*Id.*)

Fourth, Plaintiff argues, she has established a "stigma plus" procedural due process claim under the Fourteenth Amendment for four reasons: (a) she suffered injury to her reputation in that she was denied a job with Cornell Cooperative Extension (thus satisfying the "stigma" element); (b) she experienced defamation plus the loss of government employment (thus satisfying the "plus" element); (c) she was not afforded a pre-deprivation hearing although she had an implied employment contract with the CRB (due to the fact that CRB Board members had to determine whether to continue her employment each year) and her termination was not random and unauthorized (due to the fact that Defendant Miner was a high-ranking official with final authority over significant matters); and (d) indeed, even if she was an at-will employee, she was not afforded even a post-deprivation hearing (although she requested one). (*Id.*)

Fifth, Plaintiff argues, she has established an equal protection claim under the Fourteenth Amendment for four reasons: (a) she is a member of a protected class (in that she is female); (b) she was qualified for her position (in that she served in her capacity as CRB Administrator for 17 years, held more educational credentials than required, and had never been disciplined or reprimanded); (c) she suffered an adverse employment action (in that she was terminated from her employment); and (d) the circumstances surrounding the employment action give rise to an inference of discrimination (in that a similarly-situated male was not disciplined for conduct that Plaintiff was accused of committing but did not actually commit). (*Id.*)

Sixth, Plaintiff argues, she has established an FMLA claim for five reasons: (a) she was an eligible employee under the FMLA (in that she had worked the previous 12 months); (b) the City was a covered employer under the FMLA (in that it had the requisite number of employees); (c) she was entitled to the leave of absence (in that her maternity leave had been approved by the CRB prior to October of 2010); (d) she gave notice to the City of her intention

to take leave (in that the City had such notice on or before October 6, 2010, and later when she emailed the City requesting an FMLA form); and (e) she was denied benefits to which she was otherwise entitled (in that the termination interrupted her light duty leave, and the reason for the termination was a pretext for discrimination). (*Id.*)

Seventh, Plaintiff argues, she has established a retaliation claim under the First Amendment for four reasons: (a) her testimony at the hearing of January 24, 2011, was protected speech; (b) the subject about which she was called to testify was of public concern in that police misconduct has been recognized as being of public interest; (c) the proximity of her termination to her testimony (i.e., 10 days) demonstrates discriminatory animus; and (d) Defendant Miner is not protected by qualified immunity (in that Plaintiff's First Amendment rights were clearly established at the time of her termination due to the fact that *Jackler v. Byrne*, 658 F.3d 225 [2d Cir. 2011] was decided in February of 2011). (*Id.*)

### 3. Defendants' Reply Memorandum of Law

Generally, in their reply memorandum of law, Defendants assert seven arguments. (Dkt. No. 72 [Defs.' Reply Memo. of Law].)

First, Defendants argue, Plaintiff has taken liberties with the record in two ways: (a) she cites to the record nowhere in her opposition memorandum of law; and (b) for the most part, her primary evidence (her own affidavit) is not based on her personal knowledge, contains inadmissible material such as hearsay, and/or sets forth legal conclusions. (*Id.*)

Second, Defendants argue, Plaintiff's denials of Defendants' statements of material fact are ineffective for four reasons: (a) she denies many facts about which she could not possibly have any firsthand knowledge or evidence (e.g., conversations or telephone calls to which she was not a party, decisions made and impressions held by Mayor Miner, pre-trial events in the

*Paulk* matter), as often is evident by her reliance on her "information and belief"; (b) she denies several facts about matters that are independently verifiable based on court records or documentary evidence, and about which she has no admissible evidence to dispute (e.g., the existence and contents of the *Paulk* subpoena, the date of the *Paulk* trial, the *Paulk* jury verdict, and the date and contents of the State Comptroller's report); (c) she denies material facts that she plainly admitted in her own prior sworn testimony (e.g., the fact that a process server attempted to serve her at her home, the fact that she did not call McGinty or Doyle after receiving a voice mail from Brickwedde, and the fact that she was aware of the *Paulk* case prior to the trial); and (d) in many instances, she muddles Defendants' fact statements by going off in another direction she likes better, which is insufficient to call Defendants' facts into dispute). (*Id.*)

Third, Defendants argue, Plaintiff fails to save her pregnancy-discrimination claim for three reasons: (a) in her attempt to establish pretext, she relies on the incorrect legal standard (i.e., one applicable in a mixed-motive case, which this is not); (b) in any event, her conspiracy theory (i.e., that the subpoena incident was a strategic effort to adversely impact and compromise Plaintiff due to her pregnancy) is supported only by speculation and hearsay, and contradicts the testimony of McGinty, Perez-Williams and Mayor Miner; and (c) her excuses for her own ineffectiveness and the CRB's ineffectiveness do not establish pretext (and fail to show that the City's belief that she did, in fact, know that a subpoena existed, was not honestly held at the time it decided to terminate her employment). (*Id.*)

Fourth, Defendants argue, Plaintiff fails to save her retaliation claim under Title VII and the Executive Law for two reasons: (a) to avoid dismissal of this claim, she must provide sufficient, competent evidence that Defendants' counterclaims are the product of retaliatory animus; and (b) instead, Plaintiff offers only speculation (e.g., regarding Common Councilors'

knowledge of her private legal practice) and misstatements of record evidence (e.g., regarding the scope and source of Mayor Miner's knowledge of Plaintiff's private legal practice, and the nature of the City's authorization of a CLE course that Plaintiff attended). (*Id.*)

Fifth, Defendants argue, Plaintiff fails to save her due process claim under the Fourteenth Amendment for two reasons: (a) the single case that Plaintiff cites in support of her argument that she had an implied employment contract (*Potts v. City of Utica*, 86 F.2d 616 [2d Cir. 1936]) is, in addition to being old, factually distinguishable from the current case; and (b) the sole record evidence that Plaintiff adduces in support of her argument that she had an implied employment contract (i.e., the affidavit of former-CRB Board member Homer Davis) is speculative (in that the Davis ceased serving as a CRB Board member in 2008) and immaterial (in that it addresses a purported agreement to allow Plaintiff to practice law privately on City time), and in any event actually supports the fact that Plaintiff served at-will (albeit at the will of the CRB). (*Id.*)

Sixth, Defendants argue, Plaintiff fails to save her FMLA claim for two reasons: (a) her argument that Defendants interfered with her leave by terminating her while on "light duty leave" implies that *any* termination while on FMLA leave is a violation of the FMLA, which is not the law; (b) as established by Defendants earlier, Plaintiff was terminated for legitimate, non-discriminatory reasons, and she has not presented sufficient evidence to rebut these reasons. (*Id.*)

Seventh, Defendants argue, Plaintiff fails to save her retaliation claim under the First Amendment for two reasons: (a) by focusing on whether her testimony at the *Paulk* hearing was protected speech, Plaintiff ignores Mayor Miner's position that there is no causal connection between that testimony and Plaintiff's termination; and (b) in any event, she has not overcome

Mayor Miner's entitlement to qualified immunity because, although the case of *Jackler v. Bryne*, 658 F.3d 225 (2d Cir. 2011), was decided in July of 2011, the contrary case of *Bearss v. Hilton*, 445 F. App'x 400 (2d Cir. 2011), was decided in November of 2011, rendering the state of the law not "clearly established" when Mayor Miner acted. (*Id.*)

## II.     GOVERNING LEGAL STANDARD

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the moving party has met this initial responsibility, the nonmoving party must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a),(c),(e).

A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the novmoving party." *Anderson*, 477 U.S. at 248. As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted]. As the Supreme Court has famously explained, "[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts" [citations omitted]. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. [citation omitted].

Implied in the above-stated burden-shifting standard is the fact that, where a nonmoving party willfully fails to adequately respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that nonmoving party is proceeding *pro se*.[76] (This is because the Court extends special solicitude to the *pro se* litigant largely by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.)[77] As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigants must obey a district court's procedural rules.[78] For this reason, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a moving party's statement to have been admitted where the nonmoving party has willfully failed to properly respond to that statement[79]–even where the nonmoving party was proceeding *pro se* in a civil rights case.[80]

Finally, generally, special solicitude is not extended to *pro se* litigants who are attorneys.

---

[76]     *Cusamano v. Sobek*, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing cases).

[77]     *Cusamano*, 604 F. Supp.2d at 426 & n.3 (citing cases). The Court notes that Plaintiff was served with such a notice in this case. (Dkt. No. 63, Attach. 14.)

[78]     *Cusamano*, 604 F. Supp.2d at 426-27 & n.4 (citing cases).

[79]     Among other things, Local Rule 7.1(a)(3) requires that the nonmoving party file a response to the moving party's Statement of Material Facts, which admits or denies each of the moving party's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3).

[80]     *Cusamano*, 604 F. Supp.2d at 427 & n.6 (citing cases).

*See e.g., Harbulak v. Suffolk*, 654 F.2d 194, 198 (2d Cir. 1981) ("[Plaintiff] is a lawyer and, therefore, cannot claim the special consideration which the courts customarily grant to pro se parties."); *Davey v. Dolan*, 453 F. Supp. 2d 749, 754 (S.D.N.Y. 2006) ("[P]laintiff here is also a member of the New York bar and his papers will be viewed accordingly.")[81]

## III. ANALYSIS

### A. Plaintiff's Sex-Discrimination Claims Against the City Under Title VII and the Executive Law

After carefully considering the matter, the Court dismisses these claims for the reasons stated in Defendants' memoranda of law. *See, supra,* Part I.C. of this Decision and Order.

### B. Plaintiff's Retaliation Claims Against the City Under Title VII and the Executive Law

After carefully considering the matter, the Court dismisses these claims for the reasons stated in Defendants' memoranda of law. *See, supra,* Part I.C. of this Decision and Order. To those reasons, the Court would only add one point. Plaintiff's reliance on the motivating-factor standard (in her opposition memorandum of law of October 21, 2014) ignores the Supreme Court's decision (of June 24, 2013) in *Univ. of Tex. SW Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2013), in which the Court held that the level of causation that must be proved in a Title VII retaliation claim is one of but-for causation.

---

[81]     This is because the rationale for conferring special solicitude to *pro se* litigants is that, as non-attorneys, they are inexperienced or unfamiliar with legal procedures or terminology. *See* John C. Rothermich, "Ethical and Procedural Implications of 'Ghostwriting' for *Pro Se* Litigants: Toward Increased Access to Civil Justice," 67 *Fordham L. Rev.* 2687, 2697 (Apr.1999) ("[T]he special leniency afforded *pro se* pleadings in the courts . . . is designed to compensate for *pro se* litigants' lack of legal assistance.").

### C. Plaintiff's Aiding-and-Abetting Claims Against Mayor Miner Under the Executive Law

After carefully considering the matter, the Court dismisses these claims for the reasons stated in Defendants' memoranda of law. *See, supra,* Part I.C. of this Decision and Order. To those reasons, the Court would only add one point. In the alternative, the Court would dismiss this claim without prejudice to refiling in state court pursuant to 28 U.S.C. § 1367 due to the fact that no federal claims survive Defendants' motion.

### D. Plaintiff's Due Process Claim Against Defendants Under the Fourteenth Amendment

After carefully considering the matter, the Court dismisses this claim for the reasons stated in Defendants' memoranda of law. *See, supra,* Part I.C. of this Decision and Order. To those reasons, the Court would only add two points.

First, the Second Circuit's decision in *Potts v. City of Utica*, 86 F.2d 616 (2d Cir. 1936), is distinguishable from the current case in that, in addition to not addressing a due process claim, it did not address the issue of whether an implied employment contract had been created by the fact that each year a different configuration of board members of a city agency exercised its discretion *not* to remove a city employee for good cause.

Second, in any event, there is a lack of admissible record evidence from which a rational fact-finder could conclude that the CRB Board members in fact exercised their discretion *not* to remove Plaintiff for good cause each year (especially during the years 2009 and 2010). As an initial matter, it can hardly be said that there was a *different configuration* of the Board each year. *See, supra,* Paragraphs 52(d) and 52(k) of Part I.B. of this Decision and Order. Moreover, even if there had been a different configuration each year, Plaintiff points to no record evidence establishing that the issue of her continued employment was raised annually at CRB meetings.

(*See generally* Dkt. No. 67, Attach. 9 [Plf.'s Opp'n Memo. of Law].)  Finally, even if the issue

had been so raised, Plaintiff has adduced evidence admitting that the CRB experienced problems

gathering a quorum to take official action in resolving that issue.  (Dkt. No. 67, Attach. 1, at Par.

16 [Homer Davis Affid.].)  *See also* Paragraph 52(d) of Part I.B.of this Decision and Order.

  **E.**  **Plaintiff's Equal Protection Claim Against Mayor Miner Under the
Fourteenth Amendment**

  After carefully considering the matter, the Court dismisses this claim for the reasons

stated in Defendants' memoranda of law.  *See, supra,* Part I.C. of this Decision and Order.

  **F.**  **Plaintiff's FMLA Claim Against the City**

  After carefully considering the matter, the Court dismisses this claim for the reasons

stated in Defendants' memoranda of law.  *See, supra,* Part I.C. of this Decision and Order.

  **G.**  **Plaintiff's Retaliation Claim Against Mayor Miner Under the First
Amendment**

  After carefully considering the matter, the Court dismisses this claim for the reasons

stated in Defendants' memoranda of law.  *See, supra,* Part I.C. of this Decision and Order.  To

those reasons, the Court would only add two points.

  First, the fact that Mayor Miner was previously aware of Plaintiff's representation of her

husband in a lawsuit while she was employed as the Administrator of the CRB does not mean

that Miner knew that Plaintiff was regularly engaged in a private law practice in City office

space, using a City-paid secretary and City computer during the hours that she claimed to have

worked for the City.  The sole admissible record evidence on this subject is that Miner did not

have such knowledge.  (*Compare* Dkt. No. 63, Attach. 8, at ¶¶ 33-34 [Miner Decl., admitting

awareness that Plaintiff had represented husband in case in which he was the plaintiff, but

denying knowledge of scope of Plaintiff's legal practice] *and* Dkt. No. 67, Attach. 5, at 3-5, 6-7

[attaching pages "11," "12," "13," "47," and "48" of Miner's Dep. Tr., stating that she worked on case in which Plf.'s husband was a plaintiff, and had occasion to believe Plaintiff represented him in that case] *with* Dkt. No. 67, Attach. 1, at ¶¶ 24-25 [Homer Davis Affid., asserting "[u]pon information and belief" that Miner knew Plaintiff "was a practicing attorney"] *and* Dkt. No. 67, at ¶¶ 40-41 [Plf.'s Decl., asserting Miner's notice of case in which Plaintiff was the lead attorney "sometime in 2001-2002," and fact that "[m]any councilor's [sic] knew I was practicing"].)

Second, in any event, Plaintiff is incorrect when she argues that her First Amendment rights were clearly established at the time of her termination because *Jackler v. Bryne*, 658 F.3d 225 (2d Cir. 2011), was decided in February of 2011. In fact, *Jackler* was not decided until July 22, 2011. It was merely *argued* in February of 2011. Moreover, that argument did not occur until February *24*, 2011–20 days after Plaintiff's termination on February 4, 2011. Simply stated, the state of the law was not clearly established on February 4, 2011.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 63) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 6) is **<u>DISMISSED</u>**.

The parties are advised that remaining in this action are Defendants' four counterclaims against Plaintiff.

Dated: March 27, 2015
      Syracuse, New York

_____
Hon. Glenn T. Suddaby
U.S. District Judge